Our first case is Paul Hartmann AG v. Attends Healthcare Products, 2022-17, 24, 25, 26, and 27. Ms. Jaley, good morning. Good morning, Your Honors, and may it please the Court. This appeal involves the issue of inherent obviousness. The claims in this case reside in an adult diaper having a nonwoven material at the sides. Counsel, when you say inherent obviousness, do you mean that first, the determination of whether the proposed combination would have been obvious, and then the inherency comes in when you say whether that combination would necessarily satisfy the claim limitation? Well, the combination here, the second part of that... I'm just asking generally about what you mean by the word... Well, what I mean is that the specific claim limitations, the differing retaining forces that are sufficient to hold the diaper on the wearer are not taught by the prior art. So there's no finding by the Board that a diaper having those retaining forces would have been obvious. What was done is reasons made to modify a diaper, and then the question is, does it necessarily have those retaining forces? So there is no finding here that the claim differing retaining forces are taught by the prior art. So the real only way obviousness can be found is through inherent obviousness. Are those just results of structure, such that they don't add patentable distinction? No, Your Honor, because all these different nonwovens have to be specifically designed to provide structure and characteristics that you want. They aren't any inherent property of all nonwovens. It's a very complicated art, and a lot of the patents we're discussing are ways in terms of creating nonwovens that provide better retention. And so here we have a new and novel way of making a diaper that has not been shown in the prior art, where you have higher retaining forces on the side than the front, which encourages the wearer to correctly fasten the diaper to the sides. I have a question about that, just technically. The patent does say that this arrangement makes it so fusers correctly fasten the closures. What does that mean? I mean, because I thought the patent also suggested that it could be adjustable based on the size of the wearer, so that maybe the waist size of the wearer would indicate whether it was fastened to the middle or fastened to the wings. And so I'm just trying to understand, I don't know if it matters for purposes of this case, but what does it mean, how does it encourage users to correctly fasten the closures when it seems like that's going to be a different location depending on the size of the person? It can be a different location. This diaper in the Becker patents is designed to be fastened at the sides, and there is some adjustability there in that it can be fastened at different places on the sides. But what they found, and what they found is if those forces are higher at the sides, users correctly fasten it there because it feels more secure. But if a wearer incorrectly fastens it at the front, it will stay up, or you can also refasten it at the sides because the fastening engagement is high enough that it can be refastened, where you could have had a problem before if you incorrectly fasten it, and the non-woven isn't strong enough to hold up the diaper, you can tear it, and you've now ruined a diaper just because you had mis-fastened it to the first place. And so there is some adjustability for sides, but there aren't different retaining forces that don't create the size adjustability. It is the non-woven on the sides having the higher retaining forces. There is adjustability on the sides, but that's where in this diaper it's supposed to be correctly fastened. But there is some discussion, I believe, in the briefing about talking about probabilities and possibilities. I think it'd be useful to look at the final written decision, and maybe if you could walk me through where you think there's some errors in that decision, or inadequacies there, that would be useful. Certainly, and so the only aspects of the non-woven identified in the combination are basis weight. And there are a lot of non-wovens that fall within that basis weight. And so what the board did, in particular, when it came to the differing retaining forces that's at 265 to 267, the board identified, essentially assumed, what if all of the characteristics of the two non-wovens are the same except for basis weight, then the retaining forces would be higher at the sides due to the higher basis weight. Are you focusing on the sentence on 266 that says, if the extent to which the fibers are bonded together and pore size is the same? Correct. There was no finding that they would actually be the same. There was no finding in the board's decision as to why one skill in the art would have made them the same. And so that's just one possibility. What about that obviousness paragraph on page 267? Are you saying that that doesn't give a reason? Well, I think in that paragraph they actually recognize the fact that the combination wouldn't necessarily give the different retaining forces. And in that paragraph where they say it's suggested, or it's at least suggested, those findings, I think, as we pointed out in our brief, are not supported by substantial evidence. The only reference to- I think their reason is there. Excuse me? I'm asking you, do you think they provide a reason there? I don't think they provide a reason as to- I'm having a hard time seeing a reason, so that's why I'm asking you. I mean, it's a little confusing, this paragraph. I would agree. And I think the reason that they gave or what reason could be found in there is that they say that it could be suggested because there was a known relationship between sheer strength and number of fibers, and they cite Karami 626 for that. But Karami 626 also says that there are other factors that impact the retaining forces besides the number of fibers, and that's the size of the bonding area, the pore size. So the number of fibers in Karami 626 doesn't actually say what that relationship is. And so that's not a teaching or suggestion in Karami 626 that one would create a diaper having these different retaining forces that are sufficient to hold the diaper on the wearer. And I'll note that ATTENDS, in their reply brief, or in their response brief, had said, when we pointed out that the board didn't provide any reason to have differing retaining forces to support this suggestion, ATTENDS said they didn't need to because the issue is inherency. So I think any argument that there is some obviousness to the different retaining forces in this decision was disavowed by ATTENDS in their brief. Are you continuing or arguing that appendix pages 265 to 267 are, at least in part, relying on inherency to reach the conclusions that are being reached? No, I think one of our issues is that the board didn't find inherency. So the only way for obviousness was inherency. But in these pages, the most that the board did is say, well, we can envision one scenario where you would get higher retaining forces on the sides. But the combination is much broader than that. Would an alternative way of saying that is that they found inherency but they erred in doing so? That could be. They may have been trying to find inherency because there isn't a statement where they say, well, even if it wouldn't necessarily. But they couldn't have found inherency because they didn't actually address all the diapers that could be formed from the nonwovens in the combination. I keep on using the term would. Would have. Would have functioned. But they didn't address the full scope of the combination. For instance, in the combination, the sides of the bedding diaper, the board specifically found they don't have to be modified at all. In the bedding diaper, the tape closures attach to the front. They don't attach to the sides. There's no inherent ability of the sides in the bedding diaper to engage fasteners. And the only requirements listed in bedding for the sides are that it broadly be almost any nonwoven having a large basis weight range. So there are many nonwovens that fall within this combination that the board didn't address. I mean, CRAMI 626 expressly says that other factors impact retaining forces, including bonding area, interstitial size, the number of fibers. Do I remember correctly that the board also quoted that language from CRAMI and seemed to credit it? Correct. So the board has acknowledged that other factors impact retaining forces. But there's no finding as to why one of Skill and Art would have selected those specific factors in the nonwoven in the combination. Can I ask you, this is a little bit of a separate issue. But in the blue brief at page 56, it says that CRAMI's fasteners only do not attach to both the wings and the front. But I'm not sure that that's correct. When I look at JA4313 paragraph 40, it seems to state pretty clearly that the fastener elements do not require landing zones and may engage directly with any portion of the nonwoven surface, constituting the front sheet, back sheet, or wings. Yes. And our expert had explained at the board that that actually appears to be an error in that paragraph. Because if you actually look at what's taught in CRAMI 626, every permutation of the T-shaped diaper, the fasteners only engage the wings. And, in fact, there is no way for the fasteners to engage the front of the diaper in the T-shaped diaper to hold the diaper on the wearer. Because the fasteners are actually on the… But whether that's correct or not, technically, doesn't the disclosure of it disclose it? I mean, in the context of a mechanical invention like this? No, there is actually no physical way to engage the fasteners at the front. There is no prior art that actually shows a T-shaped diaper being engaged at the front of the diaper. And part of that is because the fasteners are on the inside of the front of the diaper. They're pulled up to hang on the belt of the diaper. They can't engage the front of itself because they're on the inside. And there is no prior art in the record that shows a T-shaped diaper being fastened anyway. And despite that statement, neither a Tanzan or the board has described any way in which the T-shaped diaper could be fastened by attaching to the front. If I thought there was substantial evidence to support the board's finding on this, would that impact her inherency argument at all? No, I don't think so because there still is the problem that even if there still is not enough factors identified, just saying a 20 GSM nonwoven is not enough to say what the retaining forces would be or what the relative retaining forces would be. The petitioner did not put forth any reasons why one would actually select nonwoven with the characteristics that would provide the retaining forces in the claim. They did not present why one would create a diaper that has the higher retaining forces on the sides than the front and sufficient to hold the diaper on the wearer. Counsel, you're into your rebuttal time. You can continue or save it. Mr. Albright. Good morning, Your Honors, and may it please the court. I'm Jeremy Albright on behalf of ATTENZ Healthcare Products. The board found that it would have been obvious to arrive at the binning Karami 626 diaper in which Karami 626's fasteners engage binning's nonwoven spun bond wings or Karami 626's back sheet nonwoven to accommodate small and large wasted wearers. The large wasted wearers by attaching the fasteners to the wings and the smaller wasted wearers by attaching the fasteners to the back sheet. Hartman doesn't dispute that finding that that would be an obvious diaper. Instead, what Hartman contends is that that diaper might not have stayed on the wearers that it accommodated. But that doesn't make any sense because one is not accommodated by a diaper that falls off. Can you address the pages we were talking about with opposing counsel, appendix pages 265 through 267? Yes. To respond to the arguments that were made just a few moments ago. Yes, and so there was some discussion of the if statement at appendix 266 where the board explained if the extent to which the fibers are bonded together and pore size is the same between the wings and the back sheet, then the lower basis weight back sheet will have lower retaining forces. Well, that statement is not discussing mere possibilities. It actually follows a finding from the board that in the binning Karami 626 diaper, the pore size and bonding area would actually be the same between the wings and the back sheet. How could that be? I think the board found that the material on the side sections of binning the diaper would not be modified, right? So how do you know that the materials, all the characteristics of the materials, specifically I guess the pore size and other factors, how do you know that they're the same when you're taking the material from Karami on the front and putting it on binning and using binning swings? So, Your Honors, the board cites to paragraph 115 of Mr. Jezzy's declaration where he explains it would have been obvious in the binning Karami 626 diaper to use Karami 626's preferred parameters for binning swings. Now, we're not changing binning swings. Oh, where is that? Where is it that the board says that? They cite to Mr. Jezzy paragraph 115 at appendix 265. And I believe, Your Honor, they do explain that the one difference, they do explain the one difference between the wings and the back sheet. I'm trying to find it. How do I know that that's what they're saying here when they cite paragraph 115? Because that's not, the sentence that precedes that doesn't say that. So, Your Honor, on appendix 266, that's where the board makes explicit the one difference between the nonwoven materials of the back sheet and the wings would be the number of fibers. And that's supported by Mr. Jezzy's testimony at paragraph 115 where he cites the preferred parameters for a fastener engaging nonwoven, which come from Karami 626. What about the statement on page, I think it's 263, where they say the proposed combination does not require modifying the relatively heavy nonwoven material that binning already uses for its material sections or wings? Yes, Your Honor. So, binning swings aren't being modified. It's just filling in the silence in binning. Binning swings remain 25 to 50 GSM spun bond nonwoven. I thought you just said that the board found that it would modify the characteristics of the binning material. The board found that it would be obvious to use the parameters that binning doesn't, that doesn't provide that Karami 626 does for his nonwoven wings. How does that square with the statement that you don't have to modify the material binning already uses? Well, you're not changing the material, Your Honor. It's still a 25-50 GSM spun bond nonwoven. It has to have an embossing area. It has to have a pore size in order to actually create the diaper. That's right. It already has a pore size, right? Doesn't binning, are you suggesting that the binning material and the binning patent doesn't have a pore size already? No, Your Honor. It doesn't specify what the pore size is, and that's where Mr. Jezzy comes in and explains that when you're making a diaper to engage fasteners, you would use the pore size that you knew worked from Karami 626. In fact, it's the preferred one. One of the problems I'm having is that that might be what your expert said, but I don't see where the board adopted it. Just that it quoted, I agree that they cited this paragraph 115, and I should, do you know what the appendix page is for that paragraph, by chance? It's 4596. What's that? 4596. Thank you. Are there other things said there, or should we understand that by citing that one paragraph, they adopted everything in that paragraph? Well, they at least adopted Mr. Jezzy's opinion that the one difference between the nonwoven materials would be the number of fibers. Well, from Karami 626's list of three things he associates with. Could you give me that slide again? Is it 4516? 969. I'm sorry. Thank you. And just even backing up from this, there is evidence that as between conventional fastener-engaging spun-bond nonwovens, the one with the higher basis weight will have higher retaining forces, even apart from this discussion. Could you do us a favor and turn to appendix page 4596 and maybe talk us through what you think the support is? I'm a little bit farther behind you. I was trying to deal with that aspect when we were talking about that. And just tell us how that supports some of those statements we've been talking about on appendix pages 265 through 267. Right. So Mr. Jezzy testifies that underscoring the straightforwardness of this modification, bending side flaps 34 preferably comprise spun-bond materials having a basis weight of 25 to 50 GSM and thus satisfy Karami 626's criteria for a preferred nonwoven, and a posita would have readily chosen other nonwoven characteristics, e.g. bonding area, fiber size, and interstitial size, which is pore size, such that the side flaps 34 further satisfy Karami 626's other criteria. But the board never adopted that finding. Instead, it adopted like the first finding. I don't see where in the board's opinion it said a posita would readily have chosen other nonwoven characteristics. Well, Your Honor, on paragraph 265, what the board is pointing out that Karami 626 explains three things, three characteristics of a nonwoven that can impact retaining forces. We've got pore size, bonding area, and number of fibers, which is basis weight. And from paragraph 115, the pore size and the bonding area are going to be the same between the two materials, and that's why they further go on to say the one difference would be the basis weight, because they're talking about the universe of nonwoven parameters that could impact retaining forces. Where do they say that a person of ordinary scaly art would have modified Benning's material per Karami's parameters? Your Honor, I don't know that they use those exact words. It would just be, again, on appendix 266 that the difference between the wings and the back sheet would be the number of fibers, and paragraph 115 provides substantial evidence for that statement. What is the reason for making that choice? Normally, I mean, your expert, I guess, proposed a further modification of the combined diaper. What is the reason for making by a person of ordinary scaly art would make that combination, that modification? Yes, Your Honor, I'm sorry. Those parameters are preferred directly in the art. Karami says they're the preferred parameters for a fastener engaging nonwoven, and that's exactly what we have in the Benning Karami 626 diaper. But again, there is evidence in the record that even setting aside this discussion about page 266, that as between fastener engaging spun-bond nonwovens, the one with the higher basis weight will have higher retaining forces. Regardless of all the other parameters? As between conventional spun-bond nonwovens, as are being used in this combination. And I think that's an important point. Where's that fact finding by the board? That fact finding by the board. Well, the board cites to Mr. Jesse at paragraph 120, at appendix 266. And actually, Karami 626 also supports that notion, because even though he talks about pore size and bonding area, the pore size and bonding area he provides are for a conventional nonwoven. Because Karami 626's fasteners are only for engagement with conventional nonwovens. And then beyond that, of course, we have the Hartman patents, which explain that higher retaining forces are essentially insured by a higher basis weight. Which is also supported by Mr. Jesse's testimony that more fibers means more material for the hooks to engage. And he cites two prior art references, Gorman and Gehring, that also support that notion. And all of that provides substantial evidence for the board's findings. Just to be clear, the board did find that other attributes and factors of the nonwoven impact the retaining force, right? Quoting Karami. Quoting Karami, yes, Your Honor. And those others... It's your view that the board must have further modified the material embedding. I'm just having a hard time finding where that is in the board's opinion. Sure, and our position would be that it's not a further modification of binning because binning maintains what binning discloses, which is the 25 to 50 GSM spun bond nonwoven. What other characteristics of binning's material are disclosed in binning besides the weight? That it's a spun bond nonwoven, Your Honor. Okay. Do you concede that the issue here is inherency? Yes, Your Honor, with respect to... So there are three retaining force issues at play here. We've got the diaper holding requirement, whether a diaper will stay on the wear. We've got the differential retaining forces, which is once you go to a higher basis weight wing and a lower basis weight back sheet, whether you'll have higher retaining forces in the wings. And then you have the specific retaining forces. For the diaper holding requirement, or for all three, the board made inherency findings. But our position is the board did make an obvious misfinding to support that the diaper holding requirement is met by the binning Karami 626 diaper because the goal of this whole combination is to provide size adjustability, which would require the diaper attached such that it stayed on. But inherency with respect to the specific retaining force weights and the dependent claims and also with respect to the relative retaining force requirement. Yes, Your Honor. Yes, Your Honor. Anything further, counsel? If there are no further questions, I'll cede my last minute. All right. Ms. Jaley has some more battle time. Thank you, Your Honor. I'll be brief. I'll note on what we have been discussing about the potential modification of the binning sides that there is no finding in the board's decision as to why one would have selected the same fiber, pore size, and embossing from Karami 626 from binning. And in fact, the board did find that no modification of binning was required. And binning allows virtually any nonwoven to be used. All it provided was a large basis weight range. Because it wasn't intended, it did not need to hold the fasteners onto the wearer. So all of those are within the combination. Do you have a response to opposing counsel seeking to point us to paragraph 115 on appendix page 4596? But the even attends as expert doesn't give any reason as to why those choices would make. It's a conclusory statement that one would obviously choose the same thing as Karami 626. And also the board didn't adopt that finding because it said that the binning side of the diaper does not need to be modified, which includes a large scope of nonwovens. And I'll just make one final point on the issue of the basis weight and retaining forces. The retaining forces depend on a lot of things. And so you can't just say that the retaining forces will necessarily be the same based on basis weight. What the patent does instruct is you want different retaining forces on the higher retaining forces on the sides and front. And the patent teaches one way to do that is make sure everything else is the same except for basis weight. Then you can achieve that. But it also teaches that many other factors go into the retaining forces. And there is no finding by the board that the only thing that matters is the basis weight for retaining forces. Unless there's any other questions. Thank you, Ms. Daly. Thank you to both counsel and cases submitted.